UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DENIS GRUSHKO,

      Petitioner,

      v.

WARDEN,

      Respondent.

CIVIL ACTION NO. 3:25-cv-02300

(SAPORITO, J.)

## MEMORANDUM

Denis Grushko, a prisoner incarcerated at FCI Allenwood Low, proceeds on a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. (Doc. 1). Grushko alleges that the Bureau of Prisons ("BOP") has improperly denied him time credits under the First Step Act ("FSA") for activities prior to arrival at his designated facility. For the following reasons, the Court will grant the petition in part and order the BOP to recalculate Grushko's FSA time credits to reflect that he became eligible for such credits on the day he was sentenced.

## I.  BACKGROUND

In January 2020, Grushko received an aggregate sentence of 145 months imprisonment for convictions related to a scheme to fraudulently obtain electronics from a department store. *See United States v. Vozniuk*

*et al.*, No. 18-CR-20859 (Doc. 205) (S.D. Fla., Jan. 23, 2020). Grushko was initially placed at FDC Miami, a BOP detention center, and was not transferred to his "designated facility" in McRae, Georgia, until November 6, 2020.

In a declaration, Grushko attests that between January 22, when he was sentenced, and November 6, when he reached McRae, he "participated in . . . every available programming opportunity," including BOP-recognized correspondence courses. A Certificate of Completion for one such course, "Ethics of the Fathers," was apparently sent to Grushko on September 13, 2020. (Doc. 1-2 at 1-3). Nonetheless, the BOP denied him FSA time credit for the period from January 22 through November 6, on the basis that he was ineligible for such credits until he reached his designated facility. *See* (Doc. 1-1). Grushko filed the instant petition on December 2, 2025, after exhausting administrative remedies. He seeks FSA credit for the entire period between January 22 and November 6.

## II.   DISCUSSION

The FSA generally allows inmates who "successfully participate" in evidence-based recidivism programming or other "productive activities" to earn credits toward time in pre-release custody or supervised release.

*See* 18 U.S.C. § 3632(d)(4)(A). It is undisputed that such credits cannot be earned "prior to the date that the prisoner's sentence commences" as defined in 18 U.S.C. § 3585. *See id.*, § 3632(d)(4)(B)(ii). As relevant here, that statute prescribes: "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

### A. Commencement of Sentence

This case requires us to consider a BOP regulation that contradicts the statutory definition of the "commencement" of a prisoner's sentence. Specifically, under 28 C.F.R. § 523.42, "an eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42(a). Partly on that basis, the BOP determined that Grushko was ineligible for any time credits he sought between January 22, 2020, when he was sentenced, and November 6, 2020, when he was finally transported to his designated facility in McRae, Georgia.

Following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369

(2024), courts are no longer required to give deference to agency interpretations of ambiguous statutory text. After *Loper Bright*, courts around the country have considered habeas challenges from prisoners seeking earned time credits for periods before they arrived at their designated facilities. The vast majority of courts addressing this question have found that 28 C.F.R. § 523.42(a) contradicts 18 U.S.C. § 3585(a), and therefore the blanket prohibition on earned time credits prior to arrival at the BOP's designated facility is invalid.[1]

Our review indicates that the issue has not been squarely addressed in this district, in part because petitioners making this claim have failed to show that they have participated in the relevant programming.[2] Regardless, we join the numerous courts in other districts

---

[1] *See, e.g., Gale v. Warden FCI Milan*, No. 24-13127, 2025 WL 223870, at *4 (E.D. Mich. Jan. 16, 2025) (describing the "consistent case law" on this topic); *Heath v. Knight*, No. 22-CV-7270 (RMB), 2024 WL 5198863, at *5 n.9 (D.N.J. Dec. 23, 2024) ("Many district courts, all in other circuits, have . . . found 28 C.F.R. § 523.42(a) invalid."); *Puana v. Williams*, No. 24-CV-01088-CNS, 2024 WL 4932514, at *4-5 (D. Colo. Dec. 2, 2024); *cf. Stinson v. Martinez*, No. 2:23-CV-0751, 2024 WL 4969169, at *7 (W.D. La. Nov. 12, 2024) (holding that the regulation is valid), report and recommendation adopted, 2024 WL 4965618 (W.D. La. Dec. 3, 2024).

[2] *See, e.g., Patel v. Greene*, No. 3:25-CV-2483, 2026 WL 907589 (M.D. Pa. Apr. 2, 2026); *Barry v. Greene*, No. 3:25-CV-408, 2025 WL

*(continued on next page)*

that have found 28 C.F.R. § 523.42(a) to contradict the FSA, which specifically prescribes that a sentence begins "on the date the defendant is received in custody." Grushko was ineligible for credits until he was sentenced, but "[u]nder 18 U.S.C. § 3632(d)(4)(B)(ii), [his] ineligibility ended the moment [he] was sentenced." *Huihui v. Derr*, No. 22-CV-00541-JAO-RT, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023). Although there are many legitimate reasons why a prisoner might be temporarily prevented from earning credits, *see* 28 C.F.R. § 523.41(c)(4), the concept that his sentence had not yet "commenced" after more than nine months in prison is not one of them.

### B. Successful Participation

Even if a prisoner is generally eligible to earn time credits, he is only entitled to credit for "successful participation" in prescribed programming. *See* 18 U.S.C. § 3632(d)(4)(A). Successful participation requires "a determination by Bureau staff that an eligible inmate has

---

1462571, at *3 (M.D. Pa. May 21, 2025); *Akhatsegbe v. Greene*, No. 1:24-CV-01871, 2025 WL 297699, at *4 (M.D. Pa. Jan. 24, 2025), *aff'd sub nom. Akhatsegbe v. Warden Allenwood FCI*, No. 25-1239, 2025 WL 2658991 (3d Cir. Sept. 17, 2025).

participated in the EBRR programs or PAs[3] that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." *See* 28 C.F.R. § 523.41(c)(2)). For this reason, Grushko is not automatically entitled to credit for all his time prior to arriving in McRae, even accepting his attestation that participated in "any and all available programming."

Nonetheless, the record indicates that Grushko completed some qualifying programming prior to reaching his designated facility. Specifically, a Certificate of Completion for an Aleph Institute correspondence course, apparently ordered September 13, 2020, and delivered to Grushko at FDC Miami, strongly suggests that he completed this course between January 22, 2020, and November 6, 2020. Grushko is currently receiving FSA credits for other Aleph Institute courses. *See* (Doc. 10-5 at 2). Thus, it appears that the Aleph Institute courses have been recommended for Grushko based on the BOP's risk and needs assessments. *See also* (Doc. 1-3) (excerpt from the FSA Approved

---

[3] EBRR refers to "evidence-based recidivism reduction," and PA refers to "productive activities." *See* 28 C.F.R. § 523.41.

Programs Guide describing the Aleph Institute courses).

At least one court has reasoned that until the BOP completes its risk and needs assessments, a prisoner, by definition, "*could not . . . successfully participate in programming.*" *Dane v. Bayless*, No. 5:24-CV-157, 2024 WL 5150683, at *5 (N.D. W.Va. Nov. 20, 2024) (emphasis added), report and recommendation adopted, 2024 WL 5150650 (N.D. W.Va. Dec. 17, 2024). Under this reasoning, credit for past programming would be unavailable even if the BOP later prescribes those same activities. To the extent the court intended this implication, we do not find it persuasive in Grushko's circumstances, particularly since the BOP is already giving him credit for Aleph Institute courses. *See, e.g.*, *Puana v. Williams*, No. 24-CV-01088-CNS, 2024 WL 4932514, at *5 (D. Colo. Dec. 2, 2024); *Mohammed v. Stover*, No. 3:23-CV-757 (SVN), 2024 WL 1769307, at *4 (D. Conn. Apr. 23, 2024) ("[T]he statutory scheme setting up the risk and needs assessment system does not require that the BOP first assess an inmate and assign programming before crediting an inmate's successfully-completed programs.").

Therefore, the BOP will be ordered to recalculate Grushko's credits to reflect that he became eligible to earn credits on the date he was

sentenced. Whether he successfully participated in appropriate programming, and how much credit he is entitled to[4], are issues "for the BOP to address when it undertakes its recalculation." *Gale v. Warden FCI Milan*, No. 24-13127, 2025 WL 223870, at \*4 (E.D. Mich. Jan. 16, 2025).

## III.    CONCLUSION

Accordingly, it is hereby **ORDERED** that Grushko's petition (Doc. 1) is **GRANTED in part**. The BOP will be ordered to recalculate Grushko's FSA time credits to reflect his eligibility for such credits beginning on January 22, 2020, when was sentenced and committed to BOP custody. An appropriate order follows.

Dated: April 9, 2026                *s/Joseph F. Saporito, Jr.*
                                     JOSEPH F. SAPORITO, JR.
                                     United States District Judge

---

[4] Grushko submitted a Certificate of Completion for a second Aleph Institute course, "GPS for the Soul," but that certificate is dated July 22, 2021, and there is no evidence that he participated in this course prior to reaching his designated facility. *See* (Doc. 1-2 at 5). He also attests to participation in "group sessions from religious groups," which he likens to "faith-based classes or services" that are recognized as potentially qualifying EBRRs. *See* (Doc. 1-2 at 1); 28 C.F.R. § 523.41(a)(9)).